JUDGE JONES

CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff,
UNIT DIS TICARET A.S.
366 Main Street
Port Washington, New York 11050
Tel:  (516) 767-3600
Fax:  (516) 767-3605
Owen F. Duffy (OD-3144)
George E. Murray (GM-4172)



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNIT DIS TICARET A.S.,


                              Plaintiff,                                        09 CV _____ (____)


              v.                                                               **VERIFIED COMPLAINT**


GENESIS BULK CARRIER LTD.,
and
EFE DENIZCILIK SANAYI VE TICARET LTD. STI.,
a/k/a EFE SHIPPING INDUSTRY TRADE CO. LTD.,

                              Defendants.
-------------------------------------------------------------------X


        Plaintiff UNIT DIS TICARET A.S., (hereinafter "UNIT"), by its attorneys,

Chalos, O'Connor & Duffy, as and for its Verified Complaint against the Defendants,

GENESIS BULK CARRIER LTD. (hereinafter "GENESIS") and EFE DENIZCILIK

SANAYI VE TICARET LTD. STI. a/k/a EFE SHIPPING INDUSTRY TRADE CO.

LTD. (hereinafter "EFE"), alleges upon information and belief as follows:


                                    JURISDICTION

        1.      This is an admiralty and maritime claim within the meaning of Rule 9(h)

of the Federal Rules of Civil Procedure, and falls under this Court's admiralty and

maritime jurisdiction pursuant to 28 U.S.C. § 1333. Additionally, this case falls within the ambit of this Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that the action arises under the Federal Arbitration Act, 9 U.S.C. § 1, *et. seq.*

## THE PARTIES

2.    At all times material hereto, Plaintiff UNIT was and still is a foreign business entity duly organized and existing pursuant to the laws of a foreign country.

3.    Plaintiff UNIT maintains an office and principal place of business in Istinye/Istanbul, Turkey.

4.    At all times material hereto, Plaintiff UNIT was and is engaged in the business of trading and overseas shipping.

5.    At all times material hereto, Defendant GENESIS was and still is a foreign business entity duly organized and existing pursuant to the laws of Nevis, West Indies with an address at Henville Building, Prince Charles Street, Charlestown, Nevis, West Indies.

6.    Defendant GENESIS is the owner, or disponent owner, of ocean-going vessels and charters those vessels in exchange for the payment of hire.

7.    At all times material hereto, Defendant EFE was and still is a foreign business entity duly organized and existing pursuant to the laws of a foreign country.

8.    Defendant EFE maintains an office and principal place of business in Istanbul, Turkey.

9.      Defendant EFE is engaged in the business of trading and overseas shipping and was the guarantor of Defendant GENESIS on the Contract of Affreightment at issue in this case.

## AS AND FOR A FIRST CAUSE OF ACTION
## FOR BREACH OF A MARITIME CONTRACT

10.     On or about April 24, 2009, Plaintiff UNIT, as charterer, entered into a Contract of Affreightment with Defendants GENESIS (as owner) and EFE (as guarantor of performance), for two shipments, and an optional third shipment, of metallurgical coke in bulk from Kerch, Ukraine to Bandar Abbas or Bandar Imam Khomeini, Iran, in exchange for the payment of freight at rates of $50.50 to $51.50 pmt depending on which port in Iran the cargo was delivered to. *See*, Exhibit A, contract dated April 24, 2009 (hereinafter referred to as the "Contract of Affreightment").

11.     The Contract of Affreightment was made on a code name "GENCON" form with additional clauses attached. *See*, Exhibit A, contract dated April 24, 2009 (hereinafter referred to as the "Contract of Affreightment").

12.     The Contract of Affreightment, dated April 24, 2009, between Plaintiff UNIT and Defendants GENESIS and EFE is a maritime contract.

13.     In accordance with the terms of the Contract of Affreightment, Defendants carried the first cargo.

14.     Thereafter, however, Defendants GENESIS and EFE breached the Contract of Affreightment by failing to nominate a vessel for the second shipment in accordance with the nomination procedure set out in the Contract of Affreightment.

15.    Further, Plaintiff UNIT, as was its right during the course of the contract, declared its option for a third shipment.

16.    However, Defendants GENESIS and EFE again breached the Contract of Affreightment by failing to nominate a vessel for the third shipment in accordance with the nomination procedure set out in the Contract of Affreightment.

17.    Plaintiff UNIT, in mitigation, found different vessels to carry its cargo for the second and third voyages, but was damaged because it had to pay higher freight rates as follows:

a)    For the 2nd cargo fixed at $57.75 pmt ($6.25 pmt higher than under the Contract of Affreightment) with intake of 24,201.491 mt, a loss of $151,259.32; and

b)    For the 3rd cargo fixed at $57.50 pmt ($6.00 pmt higher than under the Contract of Affreightment ) with intake of 39,901.474 mt, a loss of $239,408.84.

18.    As such, Plaintiff UNIT has suffered damages in this matter in the amount of $390,668.16 caused by the breaches of contract by Defendants GENESIS and EFE in failing to nominate vessels for the second and third shipments in accordance with the Contract of Affreightment.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR BREACH OF GUARANTEE OF PERFORMANCE

19.    Plaintiff UNIT repeats, reiterates and re-alleges each and every allegation set forth in the preceding paragraphs numbered 1 to 18 as if set forth fully herein.

4

20.    As provided for in the Contract of Affreightment dated April 24, 2009, the Defendant EFE, in an Addendum dated the same day, is the guarantor of Defendant GENESIS's "duties" pursuant to the terms of the Contract of Affreightment. *See*, Exhibit A, the Contract of Affreightment, at the last page "Addendum".

21.    The Defendant EFE, as guarantor of Defendant GENESIS's contractual duties and/or performance under the terms of the Contract of Affreightment, is in breach of it's duty of guarantee of performance because the Defendant EFE failed to perform the obligations under the Contract of Affreightment by failing to properly nominate vessels for the second and third shipments thereunder.

22.    A claim for breach of a guarantee of performance of a maritime contract is an obligation enforceable in admiralty.

## PLAINTIFF IS INITIATING ARBITRATION PROCEEDINGS AGAINST DEFENDANTS IN LONDON

23.    In accordance with the terms and conditions of the Contract of Affreightment, in particular, Box 25 referencing Clause 19a, and Additional Clause 43, Plaintiff UNIT and Defendants GENESIS and EFE agreed to resolve any disputes arising under the Contract of Affreightment by arbitration in London with English law to apply.

24.    In accordance with the agreement to arbitrate any disputes arising under the Contract of Affreightment, Plaintiff UNIT is, or is preparing to, initiate arbitral proceedings against Defendants GENESIS and EFE in London to recover its damages for the breaches of the Contract Affreightment.

THE DAMAGES SOUGHT
FOR BREACH OF THE MARITIME CONTRACT

25.     Under English law, including but not limited to § 63 of the English

Arbitration Act of 1996 and/or the London Maritime Arbitration Association's rules,

costs, including solicitor' fees, arbitrator's fees, disbursements and interest are

recoverable damages in arbitration and such damages are routinely awarded to the

prevailing party in London arbitration held pursuant to English law.

26.     As best as can now be estimated, Plaintiff UNIT expects to recover the

following amounts in London arbitration from Defendants GENESIS and EFE:

| | | |
|---|---|---|
| A. | Principal claim | $390,668.16 |
| B. | Estimated interest on claims: | $ 97,556.24 |
| | 3 years at 7.5%, compounded quarterly | |
| C. | Estimated solicitor's fees: | $100,000.00 |
| D. | Estimated arbitration costs/expenses: | $ 50,000.00 |
| **Total Claim:** | | **$638,224.40** |

PRAYER FOR RELIEF

27.     Notwithstanding the fact that the liability of Defendants GENESIS and

EFE for the alleged breaches of the Contract of Affreightment, as set forth herein, is

subject to determination by arbitration in London, there are now, or will be during the

pendency of this action, certain assets, accounts, freights, monies, charter hire, credits,

effects, payments for goods or services, bills of lading, cargo and the like belonging to or

claimed by the Defendant(s) within this District and held by various parties, as

garnishees.

28.    Plaintiff UNIT has sufficient reason to believe that Defendant GENESIS and EFE's tangible or intangible personal property or other assets, *to wit*: bank accounts; payments of freight and/or hire in U.S. dollars to other vessel Owners from the Defendant(s) and payments of U.S. dollars to the Defendant(s) from third party Owners of cargo, vendors and/or suppliers; and/or Clearing House Interbank Payment System (CHIPS) credits; and/or operational funds being transferred through intermediary banks in the for of electronic payment transfers (i.e. "EFT"s) are located in this District in the possession of several garnishees and said garnishees are enumerated in the proposed Process of Maritime Attachment and Garnishment.

29.    The Plaintiff UNIT states as grounds for the statements set forth in ¶s 27 and 28 herein that both Defendant GENESIS and EFE have previously made payments to the Plaintiff in U.S. dollars by electronic fund transfer which were processed by intermediary banks in New York and Defendants trade in U.S. dollars such that they are making or receiving payments in U.S. dollars on a regular basis, all of which are processed by intermediary banks located in this district. See, Exhibit B, SWIFT details demonstrating at least one payment to Defendant GENESIS was made using the Bank of New York Mellon in New York, New York.

30.    As set forth in the accompanying Declaration of George E. Murray, Defendants GENESIS and EFE cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Admiralty or Maritime Claims of the Federal Rules of Civil Procedure. *See*, Exhibit C, attached hereto.

31.    Because this Verified Complaint sets forth an *in personam* maritime claim against Defendants GENESIS and EFE, because Defendants GENESIS and EFE cannot

be found within this District within the meaning of Rule B of the Supplemental Rules for

Admiralty or Maritime Claims of the Federal Rules of Civil Procedure, because the

Plaintiff has reason to believe that the property of the Defendant(s) may be found in this

district and because there is no statutory or maritime bar to an attachment, the

requirements for the issuance of Rule B Process of Maritime Attachment and

Garnishment are met.

32.    The Plaintiff seeks the issuance of process of maritime attachment so that

it may obtain security for its claims against Defendants GENESIS and/or EFE and/or

*quasi in rem* jurisdiction over the property of the Defendant(s) so that an eventual

arbitration award and/or judgment confirming the arbitration award can be satisfied.

WHEREFORE, Plaintiff prays as follows:

A.    That the Defendants GENESIS and EFE be summoned to appear and

answer this Verified Complaint;

B.    That Defendants GENESIS and EFE not being found within this District,

as set forth in the Declaration of George E. Murray, then all of their tangible and

intangible property, including assets, accounts, freights, monies, charter hire, credits,

effects, payment for goods or services, bills of lading, cargo, raw materials and the like

belonging to or claimed by the Defendant(s), within this District up to the amount sued

for herein be attached pursuant to Supplemental Rule B and restrained by the garnishees

of the Defendant(s) to pay the Plaintiff's damages;

8

C.    That this Court retain jurisdiction over this matter through the entry of an

arbitration award by an arbitration tribunal in London and/or, if necessary, a judgment

from this Court confirming the award of the London arbitration tribunal so that judgment

may be entered in favor of Plaintiff UNIT for the amount of its claim with costs, *i.e.*

**$638,224.40,** and that a judgment of condemnation and sale be entered against the

property restrained and attached herein in the amount of Plaintiff's claim, plus costs to be

paid out of the proceeds thereof; and


D.    That Plaintiff has such other and further relief as the Court may determine

to be just and proper under the circumstances.


Dated: Port Washington, New York
       August 17, 2009


                          CHALOS, O'CONNOR & DUFFY, LLP
                          Attorneys for Plaintiff,
                          UNIT DIS TICARET A.S.

                  By:     _____
                          George E. Murray (GM-4172)
                          Owen F. Duffy (OD-3144)
                          366 Main Street
                          Port Washington, New York 11050
                          Tel:  (516) 767-3600
                          Fax:  (516) 767-3605

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, George E. Murray, declares under the penalty of perjury:

1.    That I am an associate at the law firm of Chalos, O'Connor & Duffy LLP, counsel for the Plaintiff, UNIT DIS TICARET A.S., herein;

2.    That I have read the foregoing complaint and know the contents thereof;

3.    That I believe the matters to be true based on documents and information obtained from employees and representatives of the Plaintiff through its agents, underwriters and attorneys; and

4.    That the reason that this verification was made by deponent and not by the Plaintiff is because the verification of the officers of Plaintiff could not be obtained within the time constraints presented by the circumstances of this case.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: Port Washington, New York
       August 20, 2009

                          CHALOS, O'CONNOR & DUFFY, LLP
                          Attorneys for Plaintiff,
                          UNIT DIS TICARET A.S.

        By:    _____
                          George E. Murray (GM-4172)
                          Owen F. Duffy (OD-3144)
                          366 Main Street
                          Port Washington, New York 11050
                          Tel:  (516) 767-3600
                          Fax: (516) 767-3605
                          Email: gmurray@codus-law.com

# EXHIBIT A

| 1.  Shipbroker<br><br>*Nakchart Ltd. UK* | RECOMMENDED<br>THE BALTIC AND INTERNATIONAL MARITIME COUNCIL<br>UNIFORM GENERAL CHARTER (AS REVISED 1922, 1976 and 1994)<br>INCLUDING "F.I.O." ALTERNATIVE, ETC.<br>(To be used for trades for which no approved form is in force)<br>CODE NAME: "GENCON"                                         Part I |
|---|---|
|  | 2. Place and date<br>*Istanbul , 24.04.2009* |
| 3. Owners/Place of business (Cl.1)<br><br>*Messrs. Genesis Bulk Carrier Ltd. , Nevis –West Indies* | 4. Charterers/Place of business (Cl.1)<br><br>*Messrs. Üit A.Ş. , istanbul* |
| 5. Vessel's name (Cl.1) Unit A.S. TBN Vessels<br>*See additional cls 18* | 6. GT/NT (Cl.1)<br>*See additional cls 18* |
| 7. DWT all told on summer load line in metric tons (abt.) (Cl.1)<br>*See additional cls 18* | 8. Present position (Cl.1)<br>– –- -- -- |
| 9. Expected ready to load (abt.) (Cl.1)  Shipments to be executed within 25.05.2009/30 June 2009 see additional  cls 28 | -- -- --- -- |
| 10. Loading port or place (Cl.1)<br>*1 or 2  safe berth(s) and anchorage always afloat Kerch,Ukraine* | 11. Discharging port or place (Cl.1)<br>*1 safe berth always afloat Bandar Abbas or Bandar Imam Khomeini in charterer's option to be declared latest 5 days after loading/BL date* |
| 12. Cargo (also state quantity and margin in Owners' option, if agreed; if full and complete cargo not agreed state "part cargo") (Cl.1)<br><br>*2 x maximum 30.000 metric  tons less 5 pct owners option metallurgical coke in bulk as sole cargo . Cargo  stowage factor is about 74cbf per metric ton without guarantee Charterers have an option for a third shipment of 30.000 mtons 5 percent more or less in owners option of same cargo declerable within the course of the contract..* | |
| 13. Freight rate (also state whether freight prepaid or payable on delivery)(Cl.4)<br><br>*Usd 51.50 pmt fios greb trimmed basis Bender Imam Khomeini .<br>Usd 50.50 pmt fios greb trimmed basis Bandar Abbas .* | 14. Freight payment (state currency and method of payment; also<br>                    beneficiary and bank account) (Cl.4)<br>*See additional cls 20* |
| 15. State if vessel's cargo handling gear shall not be used (Cl.5) | 16. Laytime (if separate laytime for load.and disch.is agreed, fill in a) and b). If total laytime for load and disch, fill in c) only) Cl.<br>a) Laytime for loading<br>*see add. Cls 22* |
| 17. Shippers / Place of bussiness (Cl.6) | b) Laytime for discharging    -<br>*see add. Cls 23*<br>c) Total laytime for loading and discharging        -      *Nil* |
| 18. Agents (loading) (Cl.6) *Charterer to nominate the  loadport Agent – disbursement proforma to be in line with other agencies at same port .  See also add cls 22 B* | 21. Cancelling date (Cl.9)<br>*See additional cls 28* |
| 19. Agents (Discharging) (Cl.6) *Owners to nominate the agent .* | |
| 20. Demurrage rate and manner payable (loading and discharging)  (Cl.7)       *See additional cls 21* | |
| 23.Freight Tax ( state if for Owners' account(Cl.13 (c)<br>*See additional cls 31*<br><br>25. Law and Arbitration (state 19 (a), 19 (b) or 19 (c) of Cl. 19; if  19 (c) agreed also state Place of Arbitration) (if not filled in 19 (a) shall apply) (Cl.19)<br>*19 (a) is applicable*<br><br>(a)State maximum amount for small claims/shortened arbitration (Cl.19)<br><br>   *100.000 USD* | 22. General Average to be adjusted at (CL.12)<br><br><br>24. Brokerage commission and to whom payable (Cl.15)<br><br>To be deducted from the freight payment.<br><br>26. Additional clauses covering special provisions, if agreed<br>*Additional printed  clauses 1-19 and typewritten clauses 18-46 both included are part of this charter party and in full force.* |

It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include Part I as well as Part II. In the event of conflict of conditions, the provisions of Part I shall prevail over those of Part II to the extent of such conflict.

| Signature (Owners) | Signature (Charterers) |
|---|---|
|  |  |

PART II
**"Gencon" Charter** (As Revised 1922, 1976 and 1994)

1. It is agreed between the party mentioned in Box 3 as the Owners of the Vessel named in Box 5, of the GT/NT indicated in Box 6 and carrying about the number of metric tons of deadweight capacity all told on summer loadline stated in Box 7, now in position as stated in Box 8 and expected ready to load under this Charter Party about the date indicated in Box 9, and the party mentioned as the Charterers in Box 4 that:

The said Vessel shall, as soon as her prior commitments have been completed, proceed to the loading port(s) or place(s) stated in Box 10 or so near thereto as she may safely get and lie always afloat, and there load a full and complete cargo (if shipment of deck cargo agreed same to be at the Charterers' risk and responsibility) as stated in Box 12, which the Charterers bind themselves to ship, and being so loaded the Vessel shall proceed to the discharging port(s) or place(s) stated in Box 11 as ordered on signing Bills of Lading, or so near thereto as she may safely get and lie always afloat, and there deliver the cargo.

2. **Owners' Responsibility Clause**
The Owners are to be responsible for loss of or damage to the goods or for delay in delivery of the goods only in case the loss, damage or delay has been caused by personal want of due diligence on the part of the Owners or their Manager to make the Vessel in all respects seaworthy and to secure that she is properly manned, equipped and supplied, or by the personal act or default of the Owners or their Manager.

And the Owners are not responsible for loss, damage or delay arising from any other cause whatsoever, even from the neglect or default of the Master or crew or some other person employed by the Owners on board or ashore for whose acts they would, but for this Clause, be responsible,or from unseaworthiness of the Vessel on loading or commencement of the voyage or at any time whatsoever.

3. **Deviation Clause**
The Vessel has liberty to call at any port or ports in any order, for any purpose, to sail without pilots, to tow and/or assist Vessels in all situations, and also to deviate for the purpose of saving life and/or property.

4. **Payment of Freight**
(a) The freight at the rate stated in Box 13 shall be paid in cash calculated on the intaken quantity of cargo.

(b) *Prepaid.* If according to Box 13 freight is to be paid on shipment, it shall be deemed earned and non - returnable. Vessel and/or cargo lost or not lost. Neither the Owners nor their agents shall be required to sign or endorse bills of lading showing freight prepaid unless the freight due to the Owners has actually been paid.

(c) *On delivery.* If according to Box 13 freight, or part thereof, is payable at destination it shall not be deemed earned until the cargo is thus delivered.41 Notwithstanding the provisions under(a), if freight or part thereof is payable on delivery of the cargo the Charterers shall have the option of paying the freight on delivered weight / quantity provided such option is declared before breaking bulk and the weight /quantity can be ascertained by official weighing machine, joint draft survey or tally.

Cash for Vessel's ordinary disbursements at the port of loading to be advanced by the Charterers, if required, at highest current rate of exchange, subject to two (2) per cent to cover insurance and other expenses.

5. **Loading/Discharging**
(a) *Costs/Risks*
The cargo shall be brought into the holds, loaded, stowed and/or trimmed, tallied, lashed and/or secured and taken from the holds and discharged by the Charterers, free of any risk, liability and expense whatsoever to the Owners. The Charterers shall provide and lay all dunnage material as required for the proper stowage and protection of the cargo on board, the Owners allowing the use of all dunnage available on board. The Charterers shall be responsible for and pay the cost of removing their dunnage after discharge of the cargo under this Charter Party and time to count until dunnage has been removed.

b) *Cargo Handling Gear*
Unless the Vessel is gearless or unless it has been agreed between the parties that the Vessel's gear shall not be used and stated as such in Box 15, the Owners shall throughout the duration of loading/discharging give free use of the Vessel's cargo handling gear and of sufficient motive power to operate all such cargo handling gear. All such equipment to be in good working order. Unless caused by negligence of the stevedores, time lost by breakdown of the Vessel's cargo handling gear or motive power - pro rata the total number of cranes / winches required at that time for the loading / discharging of cargo under this Charter Party - shall not count as laytime or time on demurrage.

On request the Owners shall provide free of charge cranemen/winchmen from the crew to operate the Vessel's cargo handling gear, unless local regulations prohibit this, in which latter event shore labourers shall be for the account of the Charterers. Cranemen / winchmen than be under the Charterers' risk and responsibility and as stevedores to be deemed as their servants but shall always work under the supervision of the Master.

(c) *Stevedore Damage*  See additional cls 36
The Charterers are to be responsible for damage (beyond ordinary wear and tear) to any part of the Vessel caused by Stevedores. Such damage shall be notified as soon as reasonably possible by the Master to the Charterers or their agents and to their Stevedores, failing which the Charterers shall not be held responsible. The Master shall endeavour to obtain the Stevedores' written acknowledgement of liability.

The Charterers are obliged to repair any stevedore damage prior to completion of the voyage, but must repair stevedore damage affecting the Vessel's seaworthiness or class before the Vessel sails from the port where such damage was caused or found. All additional expenses incurred shall be for the account of the Charterers and any time lost shall be for the account of and shall be paid to the Owners by the Charterers at the demurrage rate.

6. **Laytime** See additonal clauses 22 and 23 and 24
* (a) *Separate laytime for loading and discharging*
The cargo shall be loaded within the number of running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count.

The cargo shall be discharged within the number of running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count.

* b) *Total laytime for loading and discharging*
The cargo shall be loaded and discharged within the number of total running days/hours as indicated in Box 16, weather permitting, Sundays and holidays excepted, unless used, in which event time used shall count.

* c) *Commencement of laytime (loading and discharging)*
Laytime for loading and discharging shall commence at l3.00 hours, if notice of readiness is given up to and including 12.00 hours, and at 06.00 hours next working day if notice is given during office hours after 12.00 hours. Notice of

readiness at loading port to be given to the Shippers named in Box 17 or if not named, to the Charterers or their agents named in Box 18. Notice of readiness at the discharging port to be given to the Receivers or, if not known, to the Charterers or their agents named in Box 19.

If the loading / discharging berth is not available on the Vessel's arrival at or off the port of loading / discharging, the Vessel shall be entitled to give notice of readiness within ordinary office hours on arrival there, whether in free pratique or not, whether customs cleared or not. Laytime or time on demurrage shall then count as if she were in berth and in all respects ready for loading / discharging provided that the Master warrants that she is in fact ready in all respects. Time used in moving from the place of waiting to the loading/ discharging berth shall not count as laytime.

If, after inspection, the Vessel is found not to be ready in all respects to load/ discharge time lost after the discovery thereof until the Vessel is again ready to load/discharge shall not count as laytime.

Time used before commencement of laytime shall count.

* *Indicate alternative (a) or (b) as agreed, in Box 16.*

7. **Demurrage** See additional cls 21
Demurrage at the loading and discharging port is payable by the Charterers at the rate stated in Box 20 in the manner stated in Box 20 per day or pro rata for any part of a day. Demurrage shall fall due day by day and shall be payable upon receipt of the Owners' Invoice.

In the event the demurrage is not paid in accordance with the above, the Owners shall give the Charterers 96 running hours written notice to rectify the failure. If the demurrage is not paid at the expiration of this time limit and if the vessel is in or at the loading port, the Owners are entitled at any time to terminate the Charter Party and claim damages for any losses caused thereby.

8. **Lien Clause**
The Owners shall have a lien on the cargo and on all sub-freights payable in respect of the cargo, for freight, deadfreight, demurrage, claims for damages and for all other amounts due under this Charter Party including costs of recovering same.

9. **Cancelling Clause**
(a) Should the Vessel not be ready to load (whether in berth or not) on the cancelling date indicated in Box 21, the Charterers shall have the option of cancelling this Charter Party.

(b) Should the Owners anticipate that, despite the exercise of due diligence, the Vessel will not be ready to load by the cancelling date, they shall notify the Charterers thereof without delay stating the expected date of the Vessel's readiness to load and asking whether the Charterers will exercise their option of cancelling the Charter Party, or agree to a new cancelling date.

Such option must be declared by the Charterers within 48 running hours after the receipt of the Owners' notice. If the Charterers do not exercise their option of cancelling, then this Charter Party shall be deemed to be amended such that the seventh day after the new readiness date stated in the Owners' notification to the Charterers shall be the new cancelling date.

The provisions of sub-clause (b) of this Clause shall operate only once, and in case of the Vessel's further delay, the Charterers shall have the option of cancelling the Charter Party as per sub-clause (a) of this Clause.

10. **Bills of Lading**
Bills of Lading shall be presented and signed by the Master as per the "Congenbill" Bill of Lading form, Edition 1994, without prejudice to this Charter Party, or by the Owners' agents provided written authority has been given by Owners to the agents, a copy of which is to be furnished to the Charterers. The Charterers shall indemnify the Owners against all consequences or liabilities that may arise from the signing of bills of lading as presented to the extent that the terms or contents of such bills of lading impose or result in the imposition of more onerous liabilities upon the Owners than those assumed by the Owners under this Charter Party.

11. **Both-to-Blame Collision Clause**
If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Owners in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Owners against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set - off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or the Owners.

The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

12. **General Average and New Jason Clause**
General Average shall be adjusted in London unless otherwise agreed in Box 22 according to York - Antwerp Rules 1994 and any subsequent modification thereof. Proprietors of cargo to pay the cargo's share in the general expenses even if same have been necessitated through neglect or default of the Owners' servants (see Clause 2).

If General Average is to be adjusted in accordance with the law and practice of the United States of America, the following Clause shall apply: "In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Owners are not responsible, by statute, contract or otherwise, the cargo shippers, consignees or the owners of the cargo shall contribute with the Owners in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Owners, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Owners, or their agents, may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the goods to the Owners before delivery".

13. **Taxes and Dues**  See additional clause 29
(a) *On Vessel* - The Owners shall pay all dues, charges and taxes customarily levied on the Vessel, howsoever the amount thereof may be assessed.

(b) *On cargo* - The Charterers shall pay all dues, charges, duties and taxes customarily levied on the cargo, howsoever the amount thereof may be assessed.

(c) *On freight* - Unless otherwise agreed in Box 23, taxes levied on the freight shall be paid for to the Charterers' account.

PART II
**"Gencon" Charter** (As Revised 1922, 1976 and 1994)

**14. Agency**    See cls 18 and 19 box part    207
In every case the Owners shall appoint their own Agent both at the port of    208
loading and the port of discharge.    209

**15. Brokerage**    210
A brokerage commission at the rate stated in Box 24 on the freight, dead-freight    211
and demurrage earned is due to the party mentioned in Box 24.    212
In case of non – execution 1/3 of the brokerage on the estimated amount of    213
freight to be paid by the party responsible for such non-execution to the    214
brokers as indemnity for the latter's expenses and work. In case of more    215
voyages the amount of indemnity to be agreed.    216

**16. General Strike Clause**    217
(a) If there is a strike or lock-out affecting or preventing the actual loading of the    218
cargo, or any part of it, when the Vessel is ready to proceed from her last port or    219
at any time during the voyage to the port or ports of loading or after her arrival    220
there, the Master or the Owners may ask the Charterers to declare, that they    221
agree to reckon the laydays as if there were no strike or lock-out. Unless the    222
Charterers have given such declaration in writing (by telegram, if necessary)    223
within 24 hours, the Owners shall have the option of cancelling this Charter    224
Party. If part cargo has already been loaded, the Owners must proceed with    225
same, (freight payable on loaded quantity only) having liberty to complete with    226
other cargo on the way for their own account.    227
(b) If there is a strike or lock-out affecting or preventing the actual discharging    228
of the cargo on or after the Vessel's arrival at or off port of discharge and same    229
has not been settled within 48 hours, the Charterers shall have the option of    230
keeping the Vessel waiting until such strike or lock-out is at an end against    231
paying half demurrage after expiration of the time provided for discharging    232
until the strike or lock-out terminates and thereafter full demurrage shall be    233
payable until the completion of discharging, or of ordering the Vessel to a safe    234
port where she can safely discharge without risk of being detained by strike or    235
lock-out. Such orders to be given within 48 hours after the Master or the    236
Owners have given notice to the Charterers of the strike or lock-out affecting    237
the discharge. On delivery of the cargo at such port, all conditions of this    238
Charter Party and of the Bill of Lading shall apply and the Vessel shall receive    239
the same freight as if she had discharged at the original port of destination,    240
except that if the distance to the substituted port exceeds 100 nautical miles,    241
the freight on the cargo delivered at the substituted port to be increased in    242
proportion.    243
(c) Except for the obligations described above, neither the Charterers nor the    244
Owners shall be responsible for the consequences of any strikes or lock-outs    245
preventing or affecting the actual loading or discharging of the cargo.    246

**17. War Risks ("Voywar 1993")**    247
(1) For the purpose of this Clause, the words:    248
    (a) The "Owners" shall include the shipowners, bareboat charterers,    249
    disponent owners, managers or other operators who are charged with the    250
    management of the Vessel, and the Master; and    251
    (b) "War Risks" shall include any war (whether actual or threatened), act of    252
    war, civil war, hostilities, revolution, rebellion, civil commotion, warlike    253
    operations, the laying of mines (whether actual or reported), acts of piracy,    254
    acts of terrorists, acts of hostility or malicious damage, blockades    255
    (whether imposed against all Vessels or imposed selectively against    256
    Vessels of certain flags or ownership, or against certain cargoes or crews    257
    or otherwise howsoever), by any person, body, terrorist or political group,    258
    or the Government of any state whatsoever, which, in the reasonable    259
    judgement of the Master and/or the Owners, may be dangerous or are    260
    likely to be or to become dangerous to the Vessel, her cargo, crew or other    261
    persons on board the Vessel.    262
(2) If at any time before the Vessel commences loading, it appears that, in the    263
reasonable judgement of the Master and/or the Owners, performance of    264
the Contract of Carriage, or any part of it, may expose, or is likely to expose,    265
the Vessel, her cargo, crew or other persons on board the Vessel to War    266
Risks, the Owners may give notice to the Charterers cancelling this    267
Contract of Carriage, or may refuse to perform such part of it as may    268
expose, or may be likely to expose, the Vessel, her cargo, crew or other    269
persons on board the Vessel to War Risks; provided always that if this    270
Contract of Carriage provides that loading or discharging is to take place    271
within a range of ports, and at the port or ports nominated by the Charterers    272
the Vessel, her cargo, crew, or other persons onboard the Vessel may be    273
exposed, or may be likely to be exposed, to War Risks, the Owners shall    274
first require the Charterers to nominate any other safe port which lies    275
within the range for loading or discharging, and may only cancel this    276
Contract of Carriage if the Charterers shall not have nominated such safe    277
port or ports within 48 hours of receipt of notice of such requirement.    278
(3) The Owners shall not be required to continue to load cargo for any voyage,    279
or to sign Bills of Lading for any port or place, or to proceed or continue on    280
any voyage, or on any part thereof, or to proceed through any canal or    281
waterway, or to proceed to or remain at any port or place whatsoever,    282
where it appears, either after the loading of the cargo commences, or at    283
any stage of the voyage thereafter before the discharge of the cargo is    284
completed, that, in the reasonable judgement of the Master and/or the    285
Owners, the Vessel, her cargo (or any part thereof), crew or other persons    286
on board the Vessel (or any one or more of them) may be, or are likely to be,    287
exposed to War Risks. If it should so appear, the Owners may by notice    288
request the Charterers to nominate a safe port for the discharge of the    289
cargo or any part thereof, and if within 48 hours of the receipt of such    290
notice, the Charterers shall not have nominated such a port, the Owners    291
may discharge the cargo at any safe port of their choice (including the port    292
of loading) in complete fulfilment of the Contract of Carriage. The Owners    293
shall be entitled to recover from the Charterers the extra expenses of such    294
discharge and, if the discharge takes place at any port other than the port    295
of loading, to receive the full freight as though the cargo had been    296
carried to the discharging port and if the extra distance exceeds 100 miles,    297
to additional freight which shall be the same percentage of the freight    298
contracted for as the percentage which the extra distance represents to    299
the distance of the normal and customary route, the Owners having a lien    300
on the cargo for such expenses and freight.    301
(4) If at any stage of the voyage after the loading of the cargo commences, it    302
appears that, in the reasonable judgement of the Master and/or the    303
Owners, the Vessel, her cargo, crew or other persons on board the Vessel    304
may be, or are likely to be, exposed to War Risks on any part of the route    305
(including any canal or waterway) which is normally and customarily used    306
in a voyage of the nature contracted for, and there is another longer route    307
to the discharging port, the Owners shall give notice to the Charterers that    308
this route will be taken. In this event the Owners shall be entitled, if the total    309
extra distance exceeds 100 miles, to additional freight which shall be the    310
same percentage of the freight contracted for as the percentage which the    311
extra distance represents to the distance of the normal and customary    312
route.    313

(5) The Vessel shall have liberty:-    314
    (a) to comply with all orders, directions, recommendations or advice as to    315
    departure, arrival, routes, sailing in convoy, ports of call, stoppages,    316
    destinations, discharge of cargo, delivery or in any way whatsoever which    317
    are given by the Government of the Nation under whose flag the Vessel    318
    sails, or other Government to whose laws the Owners are subject, or any    319
    other Government which so requires, or any body or group acting with the    320
    power to compel compliance with their orders or directions;    321
    (b) to comply with the orders, directions or recommendations of any war    322
    risks underwriters who have the authority to give the same under the terms    323
    of the war risk insurance;    324
    (c) to comply with the terms of any resolution of the Security Council of the    325
    United Nations, any directives of the European Community, the effective    326
    orders of any other Supranational body which has the right to issue and    327
    give the same, and with national laws aimed at enforcing the same to which    328
    the Owners are subject, and to obey the orders and directions of those who    329
    are charged with their enforcement;    330
    (d) to discharge at any other port any cargo or part thereof which may    331
    render the Vessel liable to confiscation as a contraband carrier;    332
    (e) to call at any other port to change the crew or any part thereof or other    333
    persons on board the Vessel when there is reason to believe that they may    334
    be subject to internment, imprisonment or other sanctions;    335
    (f) where cargo has not been loaded or has been discharged by the    336
    Owners under any provisions of this Clause, to load other cargo for the    337
    Owners' own benefit and carry it to any other port or ports whatsoever,    338
    whether backwards or forwards or in a contrary direction to the ordinary or    339
    customary route.    340
(6) If in compliance with any of the provisions of sub-clauses (2) to (5) of this    341
Clause anything is done or not done, such shall not be deemed to be a    342
deviation, but shall be considered as due fulfilment of the Contract of    343
Carriage.    344

**18. General Ice Clause**    345
Port of loading    346
(a) In the event of the loading port being inaccessible by reason of ice when the    347
Vessel is ready to proceed from her last port or at any time during the voyage or    348
on the Vessel's arrival or in case frost sets in after the Vessel's arrival, the    349
Master for fear of being frozen in is at liberty to leave without cargo, and this    350
Charter Party shall be null and void.    351
(b) If during loading the Master, for fear of the Vessel being frozen in, deems it    352
advisable to leave, he has liberty to do so with what cargo he has on board and    353
to proceed to any other port or ports with option of completing cargo for the    354
Owners' benefit for any port or ports including port of discharge. Any part    355
cargo thus loaded under this Charter Party to be forwarded to destination at the    356
Vessel's expense but against payment of freight, provided that no extra    357
expenses be thereby caused to the Charterers, freight being paid on quantity    358
delivered (in proportion if lumpsum), all other conditions as per this Charter    359
Party.    360
(c) In case of more than one loading port, and if one or more of the ports are    361
closed by ice, the Master or the Owners to be at liberty either to load the part    362
cargo at the open port and fill up elsewhere for their own account as under    363
section (b) or to declare the Charter Party null and void unless the Charterers    364
agree to load full cargo at the open port.    365
Port of discharge    366
(a) Should ice prevent the Vessel from reaching port of discharge the    367
Charterers shall have the option of keeping the Vessel waiting until the re-    368
opening of navigation and paying demurrage or of ordering the Vessel to a safe    369
and immediately accessible port where she can safely discharge without risk of    370
detention by ice. Such orders to be given within 48 hours after the Master or the    371
Owners have given notice to the Charterers of the impossibility of reaching port    372
of destination.    373
(b) If during discharging the Master for fear of the Vessel being frozen in deems    374
it advisable to leave, he has liberty to do so with what cargo he has on board and    375
to proceed to the nearest accessible port where she can safely discharge.    376
(c) On delivery of the cargo at such port, all conditions of the Bill of Lading shall    377
apply and the Vessel shall receive the same freight as if she had discharged at    378
the original port of destination, except that if the distance of the substituted port    379
exceeds 100 nautical miles, the freight on the cargo delivered at the substituted    380
port to be increased in proportion.    381

**19. Law and Arbitration**    382
* (a) This Charter Party shall be governed by and construed in accordance with    383
English law and any dispute arising out of this Charter Party shall be referred to    384
arbitration in London. In accordance with the Arbitration Acts 1950 and 1979 or    385
any statutory modification or re-enactment thereof for the time being in force.    386
Unless the parties agree upon a sole arbitrator, one arbitrator shall be    387
appointed by each party and the arbitrators so appointed shall appoint a third    388
arbitrator, the decision of the three man tribunal thus constituted or any two of    389
them, shall be final. On the receipt by one party of the nomination in writing of    390
the other party's arbitrator, that party shall appoint their arbitrator within    391
fourteen days, failing which the decision of the single arbitrator appointed shall    392
be final.    393
For disputes where the total amount claimed by either party does not exceed    394
the amount stated in Box 25** the arbitration shall be conducted in accordance    395
with the Small Claims Procedure of the London Maritime Arbitrators    396
Association.    397
* (b) This Charter Party shall be governed by and construed in accordance with    398
Titles of the United States Code and the Maritime Law of the United States and    399
should any dispute arise out of this Charter Party, the matter in dispute shall be    400
referred to three persons at New York, one to be appointed by each of the    401
parties hereto, and the third by the two so chosen; their decision or that of any    402
two of them shall be final, and for purpose of enforcing any award, this    403
agreement may be made a rule of the Court. The proceedings shall be    404
conducted in accordance with the rules of the Society of Maritime Arbitrators,    405
Inc..    406
For disputes where the total amount claimed by either party does not exceed    407
the amount stated in Box 25** the arbitration shall be conducted in accordance    408
with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators,    409
Inc..    410
* (c) Any dispute arising out of this Charter Party shall be referred to arbitration at    411
the place indicated in Box 25, subject to the procedures applicable there. The    412
laws of the place indicated in Box 25 shall govern this Charter Party.    413
* (d) If Box 25 in Part I is not filled in, sub-clause (a) of this Clause shall apply.    414
* (a), (b) and (c) are alternatives; indicate alternative agreed in Box 25.    415
** Where no figure is supplied in Box 25 in Part I, this provision only shall be void but    416
the other provisions of this Clause shall have full force and remain in effect.    417

# ADDITIONAL  CLAUSES
## KERCH/BANDAR ABBAS OR BANDAR IMAM KHOMEINI
## METALLURGICAL COKE  CONTRACT OF AFFREIGHTMENT
## C/P DD. 24/04/2009 UNIT A.S. vs GENESIS BULK CARRIER LTD,NEVIS-WEST INDIES

CLAUSE 18:

Efe Denizcilik Sanayi Ticaret LTD. ŞTİ. , Istanbul  to be nominated  vessel , A1 classed and  P&I covered ,
geared and grabbed min 4 x 25ton cranes with 4 x 10 cbm grabs on .

-Owners confirm that the cranes of the vessel as described above are in well good working order with
 4 grabs available at all times with minimum 10 cubic meter capacity per grab and 25 tons of lifting
 capacity per crane .
-Owners confirm that the vessel is fully P & I  covered and classed and will maintain both during this
 contract.
-Owners confirm that the management of the vessel and the vessel itself is in full compliance with the
 international and local rules and regulations to execute the shipment mentioned in this charter party .
-Owners confirm that the vessel is singledeck type bulk carrier vessel having no obstructions within
 the holds .
-Owners confirm that the vessel is under extra war risk coverage by their  P & I and Hull underwriters.

CLAUSE 20

Freight is usd 51.50 per metric ton free in out stowed grab trimmed basis Bandar Imam Khomeini.
Freight is usd 50.50 per metric ton free in out stowed grab trimmed nasis Bandar Abbas .
Freight is deemed earned  upon the issuence/releasement of the bills of lading, discountless  and non -
returnable ship and/or cargo lost or not lost .

95 percent of freight  is payable  within 3 bank days after issuence/releasement of the bills of ladings
into the owners/managers nominated bank account in us dollars currency but in any case the freight to
be paid before breaking bulk .

CLAUSE 21

Demurage rate will be set according to the definite perfermors the owner will nominate.
The demurrage rate will be per day prorata on USD basis half despatch working time saved both ends.
Demurrage is guaranteed and to be paid by the charterer within 10 bank days after owner's
presentation of supporting documents even by fax ( has to be readable copies) for the loadport and day
by day for the discharge port.

CLAUSE 22

Load rate at berth :  7000 mt per weather working day of 24 consecutive hours including Sundays and
holiday except the super holidays unless used .
Load rate at anchorage for the balance cargo for topping off is 3000 mtons per weather working day
including Saturdays , Sundays and holidays  , otherwise same terms are applicable as of berth terms .

NOR at load port to be tendered shinc even by vhf whether in berth or not , whether in port or not ,
whether free pratique granted or not ,whether custom cleared or not upon arriving into port limits or
customary waiting anchorage area for the port anytime day or night including Saturdays , Sundays and
holidays .
Time commences to count 12 hours after the valid tenderence of NOR unless sooner commenced .

1

# ADDITIONAL    CLAUSES
## KERCH/BANDAR ABBAS OR BANDAR IMAM KHOMEINI
## METALLURGICAL COKE    CONTRACT OF AFFREIGHTMENT
### C/P DD. 24/04/2009 UNIT A.S. vs GENESIS BULK CARRIER LTD,NEVIS-WEST INDIES

CLAUSE 22 B

Loadport Agent : Timpet Shipping Ltd , Kerch-Ukraine
98312, 4 Gorkogo str.,app 16
tel/fax + 38 06561 56157 / + 38 06561 56158
e.mail: timpetshipping@kerch.com.ua <mailto:timpetshipping@kerch.com.ua

or to be changed by the charterer .

CLAUSE 23

Discharge :
Bandar Imam Khomeini 4000 mtons or Bandar Abbas 4000 mtons pwwd of 24 consecutive hrs fhex
eiu . Time from Thursday 12:00 hrs (including) untill Saturday 08:00 hrs time not to count even if
used.

NOR at discharge port shall be given during offical work days and office hours ;the vessel being in
every respect ready to discharge. NOR can be tendered  even by vhf w/w/w/w ..

Time commences to count at 1 pm if valid NOR tendered between 00.01 am to 12:00 noon and the
next working day 08:00 if valid NOR tendered 12.01 pm to 24:00 hrs .

CLAUSE 24

The time used for shifting from usual anchorage place to the berth not to count as laytime at both ends.
The time used for shifting from berth to anchorage place for topping off balance cargo at loadport not
to count as laytime.

CLAUSE 25

In case vessel fails to be granted free  pratique due to vessel's fault  the time shall cease to count untill
the time free  ratique is granted at both ends.

CLAUSE 26

The bills of ladings will be marked "freight payable as per c/p" and "clean on board" and master to
watch the cargo and receive only non-contaminated cargo in reference to "cob". Master have the right
to reject any cargo which could cause the bsl and chrts to arrange for replacement with sound one at
their time/risk/expense.
It is charterer's option to ask for " Freight Prepaid" marked bills of ladings in which case the bills of
ladings will be kept at loadport agent's custody untill the owners receive their full freight again latest
within 3 banking days.
Master will authorize the loadport agent to sign the bills of ladings on behalf of the owners/master
always in strict conformity with the mate's receipts .
Cargo quantity on the bills of ladings to be determined by mutual survey of master and independent
surveyor. Owners/Master not to be responsible for shore figures bends.

# A D D I T I O N A L     C L A U S E S
## KERCH/BANDAR ABBAS OR BANDAR IMAM KHOMEINI
### METALLURGICAL COKE   CONTRACT OF AFFREIGHTMENT
### C/P DD. 24/04/2009 UNIT A.S. vs GENESIS BULK CARRIER LTD,NEVIS-WEST INDIES

CLAUSE 27

Provided headowners agree charterer may put 1/3 original bs/l to master's bag at loadport which the cargo will be discharged against consignee's endorsement .

CLAUSE 28
The shipments to be executed between 25 April 2009 - 30th June 2009 .
Charterers are obliged to ask for a nomination minimum 10 days prior to the first day of the 5 days spread laycan they require and owners to nominate a vessel latest by 2 days prior to the first day of the laycan to ask for charterers final confirmation. Charterers will reply latest within 24 working hours .

CLAUSE 29

Any taxes/dues on cargo to be for charterers account and on vessel/flag/freight to be for   owners account both ends .

CLAUSE 30

Extra insurance levied on cargo due vessel's age/flag to be for charterer's account .

CLAUSE 31

Overtime work to be for the account of the party ordering same except  crew's and officers' overtime which are always to be for owners' account.

CLAUSE 32

Charter party terms shall always supersede bill(s) of lading terms , whenever contradictory, typewritten clauses or amendments shall principally overrule the printed text of this gencon charter party.

CLAUSE 33:

In principle owners to provide 10/7/5/3/2/1 day notices to charterers and agents however same has to be within physical and logical possibility to provide such notices.

CLAUSE 34:

Owners shall supply, free of expense,  light as on board whenever and whereever required.

CLAUSE 35

At loading port and discharge port charterers will nominate port agents and the owner will put agents in funds prior to vessel's arrival at both ends. Any delay and its consequences due failure of the owner to do so will be for owners account.

3

# A D D I T I O N A L    C L A U S E S
## KERCH/BANDAR ABBAS OR BANDAR IMAM KHOMEINI
## METALLURGICAL COKE   CONTRACT OF AFFREIGHTMENT
## C/P DD. 24/04/2009 UNIT A.S. vs GENESIS BULK CARRIER LTD,NEVIS-WEST INDIES

CLAUSE 36

Stevedore damage(s) if any to be settled directly between the owners and the stevedores . Charterer to assist the owner for their settlement with the stevedores upto their utmost provided master has reported the damage in written to the port  agent , shippers , stevedores and to the charterer latest within 24 hours of the occurance of the damage/accident.

CLAUSE 37

Protective clauses "New Both to Blame Collision Clause" , "Voymar 1950" and "P&I Bunkering Clause" to be deemed part of and incorporated in this charter party .

CLAUSE 38

The charter party terms shall always supersede bill(s) of lading terms, whenever contradictory. The typewritten clauses or amendments shall principally overrule the printed text of this gencon charter party.

CLAUSE 39

The acts of god, public enemies, restraints of rulers or established authorities, princes, fire, flood, draughts, revolution, riots, war or civil commotion and all and avery danger and accidents of the seas, rivers and navigation of whatsoever kind and nature, strikes, slowdowns, labour disputes, lock-outs, epidemics, landslides, obstruction of navigation at port of delivery and other unavoidable hindrances affecting the loading, discharge and delivery  or receiving of the cargo during this voyage are excepted and neither charterer nor shippers/receivers shall be liable for any loss or damage resulting from any such excepted causes and time lost by reason thereof shall not count as laydays or days on demurrage.

CLAUSE 40

The cargo to be loaded and trimmed (grab-spout-levelled in charterer's option) in the ship's holds as customary and no cargo to be loaded in bunkers/deep tanks or unusual places. The owners warrant that vessel is suitable for grab discharge .
Battens, beams, hatchcovers to be removed and stowed away prior commencement of loading in owners' time and expense.

CLAUSE 41

Part cargo is not allowed under this charter party.

4

# A D D I T I O N A L    C L A U S E S
## KERCH/BANDAR ABBAS OR BANDAR IMAM KHOMEINI
## METALLURGICAL COKE   CONTRACT OF AFFREIGHTMENT
## C/P DD. 24/04/2009 UNIT A.S. vs GENESIS BULK CARRIER LTD,NEVIS-WEST INDIES

CLAUSE 42

The owners guarantee that vessel will comply with all laws and regulations in the trade vessel employed throughout duration of this charter party having all necessary valid certificates required by international and local authorities/regulations failing which owners will be responsible for all consequences and expenses that may arise due to failure of same.


CLAUSE 43

General Average to be held in London as per York/Antwerp Rules 1994.
Arbitration to be held in London . LMAA SMALL CLAIMS PROCEDURE to be in force upto 100.000 usd claims and English Law to apply.

CLAUSE 44

The owners guarantee that vessel's holds will be swept, dry and clean , free from any remainder and/or smell of previous cargoes prior to tendering or cabling notice of readiness and vessel is in every respect ready to load the cargo(es) as described here under this charter party to the full satisfaction of the shipper(s). In case of failure, the vessel will be considered as not having tendered the notice of readiness until the holds of the vessel are in an acceptable condition to the shipper(s).
Time lost for this reason will not be computed as laytime and all consequential expenses to be for owners' account.

CLAUSE 45

The opening and closing of hatches whenever required by charterers, shippers, receivers or stevedores to be done by vessel's crew in owners' time and expense provided same is permitted by local authority/regulations. Otherwise same to be for charterers account.

CLAUSE 46

The master to be responsible for the quantity loaded as stated and signed for on bill(s) of lading.


O W N E R S                          C H A R T E R E R S
----------------------               ---------------------------------

5

# A D D E N D U M   TO
## KERCH/BANDAR ABBAS OR BANDAR IMAM KHOMEINI
## METALLURGICAL COKE   CONTRACT OF AFFREIGHTMENT
## C/P DD. 24/04/2009 UNIT A.S. vs GENESIS BULK CARRIER LTD,NEVIS-WEST INDIES

Mesrrs. Efe Denizcilik Sanayi ve Ticaret Ltd. Şti. İstanbul  hereby guarantees the contractual , legal and financial responsibilities , liabilities and duties of Messrs. Genesis Bulk Carrier Ltd.,Nevis-West Indies for the full execution of the  " CONTRACT OF AFFREIGHTMENT CP DTD. 24.04.2009 KERCH-IRAN METALLURGICAL COKE "  including any claims whatsoever related to may arise during or after the execution of the shipments.


GUARANTOR

Efe Denizcilik Sanayi ve Ticaret Ltd. Şti., İstanbul  24.04.2009

6

# EXHIBIT B

PINAR HNU DILMM .

MT S103                    Single Customer Credit Transfer

Basic Header        F  01  ISBKTRISAINT  ISN: 0901 187294 - 20090527
Application Header   I 103  IRVTUS3NXXXX
                            THE BANK OF NEW YORK MELLON
                            NEW YORK,NY

User Header         108  : 09000001/U20
TRN                 20   : 1135RT900987
Bank Operation Code 23 B : CRED
Date/Cur/Amount     32 A : 090527USD1310064,06
Cur/Instr. Amount   33 B : USD1310064,06
Ordering Customer   50 K : /TR480006400000211353358369
                            UNIT DIS TICARET A.S.
                            ISTINYE CAD.MAHMUTCAVUS SK.NO:5
                            ISTANBUL TR 34460
Account with Inst.  57 A : UGBINL2AXXX
                            GARANTIBANK INTERNATIONAL N.V.
                            AMSTERDAM

Benefic Customer    59   : /NL27UGBI9263238560
                            GENESIS BULK CARRIER LTD.

Details of Payment  70   : MV STORE TRADER/CP DTD.24.04.2009
Details of Charges  71 A : BEN
Sender's Charges    71 F : USD0,


    U4   0010   0020   14/08/09 16:23:13   1135 BALMUMCU / ISTANBUL
REF:14-08-2009/1135/0010/0020


                                        ①

12/07/2009 1135 ( BALMUMCU/ISTANBUL ) SB SDEM.IS/HK-0048-0097

TÜRKIYE $ BANKASI

KS-YURTICI/YURTDISI HAVALE GÖSTERME / IHBAR / LISTELEME
ISKO: G  HAVTUR: YD (YI/YT/YD) HAVREF: 09021788021292
SEKO: 1135  DGM: (A/K/P/D/S/H/Y)  AL.ADI:        SOYAD:         TARIH:
GTEYEN.SUBE: 1135  TUTAR :            25,862.70 USD  GELIS.TARIHI:12/07/2009

ACIKLAMA:MV STOVE TRADER 1 SEFER DISPEC

ALICI
    ADI  : UNIT DIS TIC   AS           HESAPNO: 9350369
    ADRES :
    TEL   :                POSTA.KODU:

GÖNDEREN
    ADI  : GENESIS BULK   CARRIER LTD.
    ADRES : HENVILLE BUILDING PRINCE CHARLES ST CHARLESTOWN NEVIS WEST IN

RAMBR  : 3322 SCBL     ÜLKE: NL    SIFRE:
MUHBR  : 5840 GARANTIBANK INTERNATIONAL N.V.       DEFTAR: 00/00/0000
MUHREF : TT0919800446                              MUH.VAL: 12/07/2009
GEL.SUBE: 1135 BALMUMCU/ISTANBUL

BU
0010 0026 14/08/09  17:30:06 1135    BALMUMCU / ISTANBUL
REF:14-08-2009/1135/0010/0026

                                                           KIMDEN :IS BANKASI BALMUMCU   SI
SI    AGU. 14 2009 16:48    FAKS NO. :

# EXHIBIT C

CHALOS, O'CONNOR & DUFFY, LLP
Attorneys for Plaintiff,
UNIT DIS TICARET A.S.
366 Main Street
Port Washington, New York 11050
Tel:  (516) 767-3600
Fax:  (516) 767-3605
Owen F. Duffy (OD-3144)
George E. Murray (GM-4172)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNIT DIS TICARET A.S.,

                              Plaintiff,

                v.

GENESIS BULK CARRIER LTD.,
and
EFE DENIZCILIK SANAYI VE TICARET LTD. STI.,
a/k/a EFE SHIPPING INDUSTRY TRADE CO. LTD.,

                        Defendants.
-------------------------------------------------------------X

09 CV _____ ( ____ )

**ATTORNEY'S DECLARATION**
**THAT DEFENDANTS**
**CANNOT BE FOUND**
**WITHIN THE DISTRICT**

This declaration is executed by the attorney for the Plaintiff, UNIT DIS

TICARET A.S. (hereinafter "UNIT"), in order to secure the issuance of a Summons and

Process of Attachment and Garnishment in the above-entitled, *in personam*, Admiralty

cause.

Pursuant to 28 U.S.C. § 1746, George E. Murray, declares under penalty of

perjury:

1.      I am an associate at the law firm of Chalos, O'Connor & Duffy LLP representing Plaintiff UNIT in this case.

2.      I have personally inquired or have directed inquiries into the presence of the Defendants GENESIS BULK CARRIER LTD. and EFE DENIZCILIK SANAYI VE TICARET LTD. STI. a/k/a EFE SHIPPING INDUSTRY TRADE CO. LTD. (hereinafter the "Defendants") in this District.

3.      I have personally checked with the office of the Secretary of State of the State of New York, using the Secretary of State's Division of Corporations database, and I have determined that, as of August 20, 2009, the Defendants are not incorporated pursuant to the laws of New York, are not qualified to conduct business within the State of New York and have not nominated agents for the service of process within New York because the Secretary of State of the State of New York has no records for the Defendants.

4.      I have inquired of Verizon Telephone Company whether the Defendants can be located within this District.  The Verizon Telephone Company has advised me that the Defendants do not have any telephone number listings within this District.

5.      I have further consulted with several other telephone directories on the internet, and I have found no telephone listing or address for the Defendants within this District.

6.      I have further made several searches on the internet with various search engines and maritime websites, and I have found no indication that the Defendants can be found within this District.

7.      In that I have been able to determine that the Defendants are not based in the District and that I have found no indication that the Defendants can be found within this District, I have formed a good faith belief that the Defendants do not have sufficient contacts or business activities within this District to defeat maritime attachment under Rule B of the Supplemental Rules for Admiralty or Maritime Claims as set forth in the Federal Rules of Civil Procedure.

8.      It is my belief, based upon my own investigation that the Defendant cannot be found within this District for the purposes of Rule B of the Supplemental Rules for Admiralty or Maritime Claims of the Federal Rules of Civil Procedure.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Port Washington, New York
       August 20, 2009

                                   CHALOS, O'CONNOR & DUFFY, LLP
                                   Attorneys for Plaintiff,
                                   UNIT DIS TICARET A.S.

By:     _____
        George E. Murray (GM-4172)
        Owen F. Duffy (OD-3144)
        366 Main Street
        Port Washington, New York 11050
        Tel:  (516) 767-3600
        Fax:  (516) 767-3605